# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| LAURIE McKEE,                 )<br>                               )<br>       Plaintiff,       )<br>                               )<br>v.                             )<br>                               )<br>STATE OF TENNESSEE             )<br>                               )<br>       Defendant.      ) | Civil Action No. 3:09-0321<br>Judge Knowles |

## MEMORANDUM OPINION

### I. Introduction and Background

This matter is before the Court upon Defendant's Motion for Summary Judgment. Docket No. 25. In support of that Motion, Defendant has contemporaneously filed a Memorandum of Law with Exhibits pertaining to Plaintiff's Deposition (Docket No. 26), a Statement of Undisputed Facts (Docket No. 27), and the Affidavit of Angela Baird (Docket No. 28).

Plaintiff filed this action pursuant to "Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights Act of 1991, and 42 U.S.C. §1983, with pendent claims for negligent hiring, negligence supervision, and negligent retention under Tennessee law."[1] Docket No. 1. Plaintiff alleges hostile working environment, discrimination based upon gender and race, and retaliation. *Id.* Plaintiff sues Defendant seeking "an order to the State of Tennessee to cease and desist its

---

[1] On October 26, 2009, the undersigned dismissed Plaintiff's §1983 claims, state law claims, claim concerning a specific incident that allegedly occurred in 2006, and punitive damage claims under Title VII. Docket Nos. 21, 22.

1

illegally discriminatory treatment of employees at Clover Bottom Developmental Center"; compensatory damages; "an award of back pay, front pay, lost job benefits, preferential rights to jobs, and other equitable relief"; punitive damages; costs, expenses, and attorney fees; pre-judgment and post-judgment interest; and "such other and further relief as the jury and Court may deem proper and just." *Id.*

Defendant filed the instant Motion and accompanying materials on January 14, 2010. Docket Nos. 25-28. Defendant argues that it is entitled to summary judgment on Plaintiff's hostile work environment claims because: (1) her charge of discrimination is untimely; (2) she cannot prove a hostile work environment based upon race or sex; (3) she cannot prove a severe and pervasive hostile work environment; and (4) she cannot prove a basis of liability against Defendant because she failed to avail herself of her employer's corrective policies. Docket No. 25. Defendant also argues that it is entitled to summary judgment on Plaintiff's retaliation claim because: (1) she fails to prove that she engaged in protected activity; (2) she fails to prove that she was subjected to retaliation; (3) she fails to prove a causal link between the protected activity and the alleged retaliation; and (4) insofar as Plaintiff is alleging retaliation for the state law claim of "whistleblowing," this Court has no subject matter jurisdiction.[2] *Id.* Defendant further argues that, to the extent that Plaintiff's Complaint might be interpreted to allege a disparate treatment discrimination claim pursuant to Title VII, Plaintiff's claim fails because: (1) the Complaint does not allege a disparate treatment Title VII claim; (2) the disparate treatment claim is untimely as to the actions of Plaintiff's supervisor; (3) Plaintiff cannot prove any adverse

---

[2] As noted above, the Court has previously dismissed Plaintiff's state law claims. See note 1, *supra*.

employment action relating to her supervisor; and (4) her employment was terminated for a legitimate, non-discriminatory reason. *Id.*

As discussed above, the Motion and accompanying materials were filed on January 14, 2010. Approximately four months later, on May 13, 2010, Plaintiff filed a "Motion for Court to Accept Response of the Plaintiff to Defendant State of Tennessee's Statement of Undisputed Facts in Support of Defendant's Motion for Summary Judgment." Docket No. 29. That Motion stated in part that Defendant's "Statement of Undisputed Facts" was based upon "what appeared to be fabricated and/or factually inaccurate documents produced by Clover Bottom officials, which documents were submitted to the EEOC in order to mislead EEOC staff in regard to the Plaintiff's EEOC charge." *Id.*, p. 1. The Motion also averred that Plaintiff's counsel had been diagnosed with a serious medical problem in January 2010, which had resulted in surgery in February 2010. The Motion further stated that counsel had had "some post-surgery complications and at times has not been able his [*sic*] previous full working hours." *Id.*, p. 2.

With the referenced Motion, Plaintiff submitted her Response to Defendant's Statement of Undisputed Facts. Docket No. 30. Many of Plaintiff's Responses were essentially arguments that attempted to evade the factual statements, and that were not supported by specific citations to the record as required by Local Rule 56.01(c). *See, e.g.,* Docket No. 30, Response Nos. 6, 9, 15, 16, 30, 31. Plaintiff did not, however, seek additional time in which to respond to the Motion for Summary Judgment itself.

On May 18, 2010, Defendant filed a Motion to Strike Plaintiff's Response to its Statement of Undisputed Material Facts. Docket No. 31. As Defendant argued, the Response was due twenty (20) days after January 14, 2010, but Plaintiff did not respond until four months

3

Case 3:09-cv-00321   Document 39   Filed 08/30/10   Page 3 of 17 PageID #: 540

later. *Id.*

For whatever reason, Plaintiff never responded to the Motion to Strike and, almost two months later, the undersigned entered an Order granting the Motion to Strike. Docket No. 36. Plaintiff has filed nothing since May 13, 2010.

Thus, Plaintiff never responded to Defendant's Motion for Summary Judgment. Plaintiff's Response to Defendant's Statement of Undisputed Material Facts was stricken by the court, because Plaintiff never responded to Defendant's Motion to Strike. Therefore, Plaintiff has not properly filed a Response to Defendant's Statement of Undisputed Material Facts.

For the reasons set forth below, Defendant's Motion for Summary Judgment will be GRANTED.

## II. Undisputed Facts[3]

Plaintiff is a former public employee who worked at Clover Bottom Development Center, one of the State of Tennessee's facilities for persons with severe developmental disorders. Docket No. 28, Affidavit of Angela Baird ("Baird Aff."). Plaintiff was a developmental technician who provided residents (approximately four per shift) direct care, non-medical services on the night shift from May 2005 to April 2007. *Id.*; Plaintiff's Dep., p. 30.

For parts of 2005 and 2006, Plaintiff was supervised at times by Nagib Faydalla, one of the night shift supervisors. Baird Aff. Mr. Faydalla was very strict and not well liked by employees under his supervision. *Id.* Mr. Faydalla was hired on December 1, 2005, but did not begin working until December 19, 2005. *Id.*

Mr. Faydalla, among other supervisors, supervised Plaintiff until she sustained a worker's

---

[3] The following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.

4

compensation accident on February 5, 2006. Plaintiff's Dep., p. 28-30, 68. Plaintiff claims that Mr. Faydalla was rude and abrasive to her, yelled at her, and closely monitored her between December 19, 2005 and February 5, 2006. *Id.,* p. 203-205, 209, 214-215, 218-219. After her accident, Plaintiff was on light duty until March 2006, and was not under Mr. Faydalla's supervision during that time. *Id.,* p. 73-74, 76. Plaintiff was then placed on leave because there was no longer light duty work. *Id.,* p. 73-74. After Plaintiff recovered from her accident, she went on maternity leave until August 2006. *Id.,* p. 72-73. Accordingly, Plaintiff was on leave from March 2006 through August 2006. *Id.* Upon her return, Mr. Faydalla became Plaintiff's primary supervisor. *Id.,* p. 190. Mr. Faydalla remained her primary supervisor until mid-October 2006. *Id.,* p. 180-183. After mid-October 2006, Plaintiff was no longer supervised by Mr. Faydalla because she was transferred to work at a hospital to attend to a resident who was hospitalized until December 2006. *Id.* In 2007, Plaintiff primarily worked in another building, and was not supervised by Mr. Faydalla. *Id.*

Plaintiff claims that Mr. Faydalla's rude and abrasive behavior continued during the August 2006 through mid-October 2006 period. *Id.,* p. 222-257. She claims that he would not cooperate with her for scheduling changes, was easily irritated, closely monitored her, accused her of sleeping when she was not sleeping, accused her of verbally abusing a resident when she did not, checked her work closely, yelled at her, and restricted her movements. *Id.*

She states that he made the following remarks: women were "no good in the workforce"; "women belong in the home . . . to cook and clean"; women were "worthless"; women were "just fat and lazy anyway"; and he "hated white women." *Id.*, p. 97. Plaintiff is not sure whether he made the remarks during the December 2005 to February 2006 time period or the August 2006

5

to October 2006 time period. *Id.*, p. 261-263. Plaintiff acknowledges that she did not report these comments in a thirty-four page complaint about Mr. Faydalla that she gave to Clover Bottom's Human Resource Director because "I guess I didn't think about it when I was writing it," and "I just shrugged it off and blew it off when he was doing it." *Id.*

On February 26, 2007, Ms. Adams, the grounds supervisor, found Plaintiff sleeping. Baird Aff. Plaintiff had fallen asleep while caring for a resident who had just been transferred from the hospital to the Clover Bottom infirmary and who required intensive monitoring. *Id.* Because Plaintiff was on intensive monitoring duty, the level of disciplinary scrutiny given to such an infraction increases as a result of the seriousness of the resident's risk. *Id.*

Plaintiff admitted that she was sleeping. Baird Aff. After an investigation of the incident, the infraction was confirmed. *Id.* This occurrence was Plaintiff's third inattention to duty infraction in two years. *Id.* An inattention to duty infraction involving an intensive monitoring assignment is a severe infraction warranting stern discipline, including termination of employment. *Id.* Plaintiff's employment with the State of Tennessee was terminated as of April 27, 2007. *Id.*

Plaintiff filed her EEOC Charge of Discrimination on November 8, 2007. Plaintiff Dep., Ex. 31.

### III. Analysis

#### A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time

> shall be twenty-one (21) days after the service of the motion,
> unless otherwise ordered by the Court. Failure to file a timely
> response shall indicate that there is no opposition to the motion.

Defendant filed the pending Motion on January 14, 1010. Docket No. 25. Plaintiff has failed to timely respond to Defendant's Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the
> motion for summary judgment must respond to each fact set forth
> by the movant by either (i) agreeing that the fact is undisputed; (ii)
> agreeing that the fact is undisputed for the purpose of ruling on the
> motion for summary judgment only; or (iii) demonstrating that the
> fact is disputed. Each disputed fact must be supported by a citation
> to the record. ...
> . . .
> **g. Failure to Respond.** Failure to respond to a moving party's
> statement of material facts, or a non-moving party's statement of
> additional facts, within the time periods provided by these Rules
> shall indicate that the asserted facts are not disputed for the
> purposes of summary judgment.

Plaintiff has failed to timely respond to Defendant's Statement of Undisputed Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

## B. Motion for Summary Judgment

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

7

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met its burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party,

8

however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**C. 42. U.S.C. § 2000e-2**

Title VII of the Civil Rights Act of 1964 ("Title VII") protects employees from discrimination on the basis of an individual's race, color, religion, sex, or national origin, and provides, in part:

> It shall be an unlawful employment practice for an employer--
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

A plaintiff may establish a claim of discrimination under Title VII either by introducing direct evidence of discrimination, or by proving circumstantial evidence that would support an inference of discrimination. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000),

9

*citing Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

If the plaintiff lacks direct evidence of discrimination, the circumstantial evidence approach is used and the *McDonnell Douglas-Burdine* tripartite test is employed. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), as later clarified by *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The *McDonnell Douglas-Burdine* tripartite test requires the plaintiff to first establish a prima facie case of discrimination. *Id.* If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id.* If the defendant does so, the plaintiff must then show that the proffered reason was actually pretextual. *Id.* The plaintiff may establish pretext by showing that, 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; or 3) the stated reasons were insufficient to explain the defendant's action. *Id. See also, Cicero v. Borg-Warner Automotive, Inc.,* 280 F.3d 579, 589 (6th Cir. 2002). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

Once the plaintiff has established a prima facie claim and has introduced evidence of pretext such that the jury could reject the defendant's explanation, it is the province of the jury to weigh the evidence, draw all reasonable inferences therefrom, and make credibility

10

determinations. *Reeves v. Sanderson Plumbing Prod. Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000). If a reasonable trier of fact could disbelieve the defendant's proffered reasons, then granting summary judgment would be inappropriate. *Id.*

**D. The Case at Bar**

**1. Hostile Work Environment Created By Mr. Faydalla on Account of Plaintiff's Race and Gender**

Plaintiff avers that her supervisor, Mr. Faydalla, created a hostile work environment through his rude and abrasive management style, which included, *inter alia*, yelling at her and making disparaging remarks. Docket No. 1. Plaintiff's only claims regarding a hostile work environment are directed to conduct of Mr. Faydalla, whom she refers to as a "toxic supervisor." *Id.*, p. 1, 4.

Title VII allows for two types of actions: one, asserting claims for "discrete discriminatory acts," and the other, asserting claims for a "hostile work environment." *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Discrete discriminatory acts are stand alone acts, while hostile work environment claims involve repeated conduct. *Id.*

Defendant argues that Plaintiff cannot sustain her Title VII hostile work environment claims because she did not file her EEOC Charge within 300 days of Mr. Faydalla's alleged discriminatory acts, thereby failing to exhaust her administrative remedies with the EEOC before filing suit. Docket No. 26, *referencing* 42 U.S.C. § 2000-e5(e) (In order to exhaust administrative remedies, a plaintiff must file an EEOC Charge within 180 days of the alleged unlawful employment practice or, if the plaintiff has instituted proceedings with a state or local

11

agency, within 300 days of the alleged unlawful employment practice.). Failure to timely exhaust administrative remedies is an appropriate basis for dismissal of a Title VII action. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). The exhaustion of administrative remedies is a condition precedent to a Title VII action. *See Zipes v. TWA,* 455 U.S. 385, 392-298 (1982).

Defendant argues that, because Plaintiff alleges a hostile work environment, which, by definition, involves repeated conduct, Plaintiff's 300 days began on the last day that Mr. Faydalla allegedly engaged in conduct creating a hostile work environment for Plaintiff. Docket No. 26. Defendant contends that, because Mr. Faydalla last supervised Plaintiff in mid-October of 2006, and Plaintiff did not file her EEOC Charge of Discrimination until November 8, 2007, more than one year after Mr. Faydalla's alleged discriminatory actions occurred, Plaintiff's EEOC Charge is untimely with regard to her hostile work environment claim. *Id.* Defendant maintains that because Plaintiff's EEOC Charge is untimely with regard to her hostile work environment claim, she has not satisfied her condition precedent to filing such claim, and it is entitled to summary

judgment in this regard.

The Supreme Court, in *Nat'l R.R. Passenger Corp. v. Morgan,* discussed the issue of when an unlawful employment practice occurs in a Title VII hostile work environment claim:

> The timely filing provision [of 42 U.S.C. § 2000e-5(e)(1)] only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that *an act* contributing to the claim occurs *within the filing period,* the entire time period of the hostile work evironment may be considered by a court for purposes of determining liability.

12

536 U.S. 101, 110 (2002) (Italics added).

Accordingly, in order to be considered timely with regard to her hostile work environment claim, Plaintiff's EEOC Charge of Discrimination must have been filed within 300 days of an act of discrimination by Mr. Faydalla. Plaintiff, in her Deposition, testified that she had not been supervised by Mr. Faydalla since mid-October 2006. Plaintiff's Dep, p. 181-183. She testified, "I wasn't under Mr. Faydalla after this - after October, probably after October 13, 2006." *Id.*, p. 183.

There is no indication in the Record that Plaintiff alleged any discrimination by Mr. Faydalla after her last date working under him, in mid-October 2006. Plaintiff filed her EEOC Charge on November 8, 2007, more than one year after Mr. Faydalla's last alleged discriminatory act. Plaintiff's Dep., Ex. 31. Because Plaintiff filed her EEOC Charge more than 300 days after Mr. Faydalla's last alleged discriminatory act, her EEOC Charge is untimely with regard to her hostile work environment claim.

The timely filing of an EEOC Charge is a requirement that can be subject to waiver, estoppel, and equitable tolling, however, when equity so requires. *Morgan*, 536 U.S. at 121, *citing Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982). Plaintiff has proffered no explanation for her late-filed EEOC Charge that would justify waiver, estoppel, or equitable tolling with regard to her hostile work environment claims.

Because Plaintiff's EEOC Charge was untimely with regard to her hostile work environment claims, and because she has failed to proffer an explanation that would justify waiver, estoppel, or equitable tolling, Plaintiff cannot sustain her hostile work environment

13

claims. Defendant is entitled to a judgment as a matter of law on these claims.[4]

## 2. Retaliation

Plaintiff also claims that her employment was terminated in retaliation for the submission of "a handwritten report of the harassment and illegal discrimination she was suffering on account of her gender and race." Docket No. 1, p. 8. This report (or complaint) was thirty-four pages in length, and was presented to Donald C. Barrie, Director of Human Resources at Clover Bottom, sometime between October 13, 2006, and November 1, 2006. *Id.*, p. 7-8; Docket No. 27, p. 8. The complaint details Mr. Faydalla's abrasive behavior and lack of interpersonal skills, but makes no mention of any belief of a hostile work environment based upon race or sex. Docket No. 27, p. 9. In fact, Plaintiff testified at her Deposition that she did *not* believe that Mr. Faydalla mistreated her on the basis of her race or sex, but rather mistreated everyone, and specifically mistreated her because of her friendship with another supervisor. *See* Plaintiff's Dep., p. 95-96, 99-100, 194-196, 266-269. In spite of this testimony, the basis of Plaintiff's retaliation claim is the vague accusation that the Administration of Clover Bottom was "looking for an excuse to fire [her]" after she submitted the complaint about Mr. Faydalla. *Id.*, p. 12.

In order to prevail on a Title VII retaliation claim, Plaintiff must establish that: (1) she engaged in activity protected by Title VII; (2) Defendant knew of the exercise of her protected rights; (3) Defendant thereafter took an adverse employment action against her; and (4) there was a causal connection between the protected activity and the adverse employment action. 42

---

[4] Because Defendant is entitled to a judgment as a matter of law on Plaintiff's hostile work environment claims because she failed to timely-file her EEOC Charge of Discrimination regarding Mr. Faydalla's alleged discriminatory conduct, the undersigned will not address the other reasons why Plaintiff cannot sustain these claims.

14

U.S.C. § 2000e-3(a).

Defendant argues that Plaintiff's retaliation claim fails because she cannot demonstrate that she engaged in protected activity or that she was subject to retaliation. Docket No. 26. Defendant also argues that Plaintiff cannot establish the requisite causal nexus. *Id.*

Because Plaintiff did not complain of discrimination protected by Title VII in her thirty-four page complaint against Mr. Faydalla, she cannot demonstrate that she engaged in a protected activity.

Additionally, Plaintiff filed her complaint against Mr. Faydalla in mid to late October 2006, but she was not terminated until April 2007. Baird Aff. The Sixth Circuit has held that, "in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is *acutely near* in time, the close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004). The near six month delay between Plaintiff's filing of her complaint against Mr. Faydalla and her termination is beyond the "acutely near" parameters discussed by the Sixth Circuit.

Moreover, the record shows that Defendant had a completely legitimate reason for terminating Plaintiff. Plaintiff was discovered asleep at 4:50 a.m. on February 15, 2007. Docket No. 26-5, p. 25-28; Docket No. 28, p. 2. As a result of this incident, Plaintiff was cited for inattention to duty while caring for a resident who required intensive monitoring. Docket No. 28, p. 2. That resident had just been transferred from a hospital back to Clover Bottom and was in the infirmary. The Grounds Supervisor, Ms. Adams, discovered Plaintiff sleeping. *Id.* During the investigation, Plaintiff admitted that she had been asleep, stating that she had been

exhausted that night because of a very sick infant child. Docket No. 26-5. The referenced incident was Plaintiff's third infraction for inattention to duty. Docket No. 28, p. 2. Defendant's policies provide that an inattention to duty infraction involving an intensive monitoring assignment is a severe infraction warning stern discipline, including termination of employment. *Id.*

Plaintiff was notified by letter dated February 27, 2007, that her employment would be terminated, but that she had the right to submit information to be considered before the termination recommendation was carried out. Docket No. 26-5, p. 29. Plaintiff was subsequently terminated as of April 27, 2007. Docket No. 28, p. 2-3.

In short, insofar as the record shows, Mr. Faydalla had absolutely nothing to do with the inattention to duty infraction or with Plaintiff's termination.

Plaintiff can neither establish that she engaged in protected activity nor that her termination was in any way related to her filing a complaint against Mr. Faydalla. Accordingly, Plaintiff cannot sustain this claim, and Defendant is entitled to a judgment as a matter of law on Plaintiff's retaliation claim.

**3. Disparate Treatment**

Although Defendant argues that Plaintiff cannot sustain a disparate treatment claim, Plaintiff did not raise such a claim in her complaint or EEOC Charge of Discrimination. Because Plaintiff did not raise a disparate treatment claim, she cannot recover on those grounds.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (Docket No. 25)

will be GRANTED.

                                              _____
                                                 E. CLIFTON KNOWLES
                                                 United States Magistrate Judge